CITY OF MIDDLETOWN, APPELLANT, *v.*
CAMPBELL ET AL., APPELLEES.

(No. CA83-09-0105 — Decided
November 19, 1984.)

*Sheldon A. Strand,* for appellant.
*Theodore Repper, Jr.,* for appellees.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Butler County.

Procedurally this appeal comes to us from the trial court's vacation of a default judgment pursuant to Civ. R. 60(B)(1). The sole assignment of error by the city of Middletown, plaintiff-appellant herein, alleges the trial court abused its discretion in setting aside the default judgment entered against Vernon and Kathleen Campbell, defendants-appellees herein. Appellant contends the appellees failed to meet the test for granting Civ. R. 60(B) motions enunciated in *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97 [68 O.O.2d 251], *i.e.,* to prove the timeliness of their motion, an adequate ground for seeking relief, and a defense to the original cause of action.

I

Before addressing the argument of appellant, we must first turn to the issue of whether the trial court had jurisdiction to vacate the default judgment. The original cause of action in the case *sub judice* is eminent domain and hence governed by R.C. Chapter 163.

The answer period in eminent domain or appropriation cases, enunciated in R.C. 163.08, has been held to be jurisdictional (*i.e.,* substantive), rather than procedural. *Akron* v. *Gay* (1976), 47 Ohio St. 2d 164 [1 O.O.3d 96]. Accordingly, a trial court is without jurisdiction to modify a default judgment where the property owner has failed to file an answer within the time prescribed by law. *Masheter* v. *Welschenbach* (1976), 48 Ohio St. 2d 8 [2 O.O.3d 31]. These holdings have in the past lead to harsh results and were not without criticism. See, *e.g., Masheter* v. *Hughes* (1970), 25 Ohio Misc. 121 [54 O.O.2d 129].

Subsequent to the decisions in *Gay* and *Welschenbach,* the General Assem-

bly amended the language governing the answer period in appropriation cases. We believe this amendment significantly changes the law.

The relevant portion of former R.C. 163.08 (see 131 Ohio Laws 183-184), under which the *Gay* and *Welschenbach* cases were decided, reads:

"* * * Any answer shall be filed on or before the third Saturday after the return day of the summons or service by publication as set forth in section 163.07 of the Revised Code. No extension of time for filing of an answer shall be granted."

The General Assembly's 1981 amendment to R.C. 163.08 (see Am. S.B. No. 61, 114th Gen. Assembly, eff. Aug. 25, 1981) modifies the answer period as follows:

"An answer shall be served in accordance with Civil Rule 12. If the agency involved in the action is a private agency, no more than one extension of the time authorized by Civil Rule 12 for serving an answer shall be granted pursuant to Civil Rule 6, and that extension shall not exceed thirty days."

Appellant maintains the answer period remains jurisdictional. It argues the amendment is ambiguous and so should be read in light of the interpretation given the former statutory provisions. See R.C. 1.49. Given this prior interpretation, appellant asserts the legislature would have specified in the language if it wished to make the answer period procedural.

We do not believe the statute contains any ambiguity. The plain language of the amendment makes clear that the answer period is now procedural, at least as to public agencies. First, the new language makes the answer period conform to that period prescribed by the Rules of Civil Procedure for other civil actions. The Rules of Civil Procedure in other civil actions are considered procedural, not substantive, in nature. Second, while there are limits as to exten-

sions of time for appropriations by private agencies, the language governing public agencies,[1] of which appellant is one, contains no such limitation.

Thus, it would appear from the plain language of R.C. 163.08 that the legislature intended to make the answer period in appropriations by public agencies procedural in nature and in so doing correct some of the inequities of the past. See *Hughes, supra.* Accordingly, the holding of *Welschenbach* whereby a trial court lacked jurisdiction to set aside a default judgment where the defendant had not answered, no longer controls.

We, therefore, conclude the trial court had jurisdiction to set aside the default judgment and so we turn to the issue of the granting of appellees' Civ. R. 60(B) motion.

## II

To deny or to grant a Civ. R. 60(B) motion is within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the trial court abused its discretion. *Adomeit, supra,* at 103. The parameters of that discretion are delineated in *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146 [1 O.O.3d 86], paragraph two of the syllabus:

"To prevail on a motion brought under Civ. R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ. R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

Appellant in its brief argues that the appellees did not satisfy any of these

---

[1] Private and public agencies are defined in R.C. 163.01(A).

criteria. We will address these criteria in the order raised by appellant.

## A

The first issue raised is the timeliness of the motion. For a Civ. R. 60(B)(1) motion to be timely, it must be filed both within one year and within a reasonable time. Civ. R. 60(B); *GTE Automatic, supra,* at paragraph two of the syllabus. Appellant contends appellees' motion failed to meet the second prong of this timeliness test, *i.e.,* it was not filed within a reasonable time.

Appellant's only citation, *Mount Olive Baptist Church* v. *Pipkins Paints* (1979), 64 Ohio App. 2d 285 [18 O.O.3d 319], does not support this proposition. Three factual differences are immediately apparent. First, the trial court in *Mount Olive Baptist Church* granted the Civ. R. 60(B) motion on the grounds of "any other reason justifying relief," not on "excusable neglect." Second, in *Mount Olive Baptist Church* the trial court found that filing the motion seven months after service and four months after entry of the default judgment was unreasonable. In the case *sub judice* only three months elapsed after entry of the default judgment. Third, the underlying cause of action in *Mount Olive Baptist Church* was a breach of contract between private parties. The underlying cause of action in the case at bar involves an appropriation of private property by a municipality. Based on these factual distinctions, we find the case inapposite to the case at bar.

We believe the determination of whether a motion to vacate is filed within a reasonable time is, like the determination of the motion itself, dependent upon the facts and circumstances of each case. See *Colley* v. *Bazell* (1980), 64 Ohio St. 2d 243, 249-250 [18 O.O.3d 442]; *Cautela Bros.* v. *McFadden* (1972), 32 Ohio App. 2d 329 [61 O.O.2d 506]. In the case at bar, appellees concede they were in error not to file an answer. The record indicates that upon their discovery of the neglect, *i.e.,* when attorney Robert Ingram's[2] January 3, 1983 letter informed them of the discrepancy between their and the appellant's understanding of the proceedings, the appellees retained counsel, who discovered the default judgment[3] and who filed the motion to vacate the judgment on their behalf. In our opinion, the fact that these events took three months from the entry of the default judgment does not on its face constitute an unreasonable time. Nor does the record disclose appellant suffered any prejudice by the lapse of these three months.

One factor which does weigh in appellant's favor is the nature of the underlying proceeding. The legislature clearly intended that appropriation cases be handled expeditiously. See R.C. 163.22. The prompt adjudication of these cases enables public projects to be rapidly completed. The trial court, in its granting of the motion to vacate, was cognizant of this concern and shaped its entry accordingly. The default judgment was vacated as to the price only. The taking of appellees' property by the default judgment was not vacated. Given the circumstances of this case, such an approach adequately protects the public's interest in prompt completion of public work projects while ensuring that the merits of appellees' claim are heard.

Accordingly, we find the motion to vacate was filed within a reasonable time.

---

[2] Robert Ingram was retained by appellees to pursue an insurance claim based on the vandalism. Appellees never informed Ingram of the appropriation proceeding.

[3] As appellees had filed no answer, notice of the motion for a default judgment was not served. Civ. R. 55(A).

## B

Appellant next disputes the trial court's finding of excusable neglect. Appellant cites *Mount Olive Baptist Church, supra,* at 288, which held that "* * * a party who willfully and deliberately chooses to ignore a complaint and has stated no other reason for failing to appear or answer a complaint * * *" has not stated a ground for relief pursuant to Civ. R. 60(B)(5). As previously noted, that case is factually distinguishable from the case at bar. Unlike the *Mount Olive Baptist Church* case wherein the defendant threw the complaint in the wastebasket, here Vernon Campbell, after reading the complaint without the aid of his eyeglasses, attempted to resolve the matter by contacting appellant's attorneys. Such action was not unreasonable in light of the parties' previous dealings.

These dealings with appellant began in July 1978. Over the next three years, appellant wrote various letters to the appellees offering to purchase their property. These offers were all rejected by appellees apparently in oral communication with appellant's agents.

Nothing in appellees' actions constitutes a "calculated and conscious decision to ignore the judicial process" similar to that found in *Mount Olive Baptist Church, supra,* at 288.

Accordingly, we hold the trial court did not abuse its discretion in finding appellees' failure to answer was the result of excusable neglect.

## C

Lastly, appellant argues that the appellees presented no defense to the action and, in fact, refused to present a defense as shown by Vernon Campbell's refusal to answer appellant's question concerning his valuation of the property. Appellees counter, and the trial court so held, that there is no "defense" to an ap-

propriation action. The final test of *GTE Automatic* is thus inapplicable to an appropriation case.

To the extent a property owner may not defeat an agency's taking of his property in an appropriation proceeding,[4] appellees are correct in stating that a defense, as that term is typically used, is inapposite to an appropriation proceeding. The only issue to be determined in an appropriation case is the proper valuation of the property to be appropriated. *Masheter* v. *Benua* (1970), 24 Ohio App. 2d 7, 10 [53 O.O.2d 89]. Any defense which must be presented, therefore, must go to the proper valuation of the property.

Determining the value of the property is a two-step process. First, the date of take must be ascertained, and then, the value of the property on that date. *Bekos* v. *Masheter* (1968), 15 Ohio St. 2d 15 [44 O.O.2d 9]. Ohio law is well-established that the date of take may be prior to the taking of possession or the trial date where the property's value has depreciated "* * * due to the activity of the appropriating authority in acquiring other properties in the immediate vicinity and demolishing buildings thereon, causing deterioration of the neighborhood and depreciation of the remaining properties * * *." *Bekos, supra,* syllabus.

The evidence presented in the trial court below demonstrates that, in 1978, appellant appraised the property at $9,000. After demolition of nearby homes and vandalism to appellees' property, including vandalism done by an employee of the independent contractor hired by appellant to demolish adjacent properties, appellant reappraised the property at $4,300 in September 1980. In its April 28, 1981 letter, submitted by stipulation of the parties, appellant's agent admits the reappraisal was due to the vandalism to the property.

---

[4] To contest an agency's right to take property, the property owner must do so in a separate suit. *Masheter* v. *Benua* (1970), 24 Ohio App. 2d 7, 9.

Inasmuch as the evidence presented raises the issue that an earlier date of take should have been used in the case at bar, appellees have presented a defense or claim as required by *GTE Automatic, supra.*

We note that the trial court's original judgment of $4,300 was required by the provisions of R.C. 163.09(A)[5] as the appellees had filed no answer and appellant had properly set forth its appraisal of the property in documents filed with the clerk of courts. *Board of Edn.* v. *Dudra* (1969), 19 Ohio St. 2d 116, 119-120 [48 O.O.2d 110]. The date of take has, therefore, never been judicially determined.

In summary, appellees demonstrated that their motion to set aside the default judgment was timely filed, that their failure to answer was the result of excusable neglect, and that they had a defense to present should relief be granted. We, therefore, find that the trial court did not abuse its discretion in granting the motion and overrule appellant's assignment of error.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., CASTLE and ZIEGEL, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, and ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, were assigned to active duty pursuant to Section 6(C), Article IV, Constitution.

---

[5] Normally when entering a default judgment in a civil matter, the trial court has discretion to conduct hearings on the issue of damages. Civ. R. 55(A).